HALL, Judge.
Plaintiff filed this redhibitory action to rescind and set aside the sale of a D-7 Caterpillar Bulldozer; for return of the purchase price of $2,600.00; for $4,800.00 in damages; and for storage of the machine at the rate of $4.00 per day. Alternatively, plaintiff prayed for judgment against defendant for breach of contract in the sum of .$5,900.00, plus $4.00 per day storage charges. Defendant answered and reconvened for $346.40, of which sum $180.00 was averred to be due for grading work unconnected with the sale, and the balance amounting to $166.40 was claimed for painting the bulldozer.
Following trial on the merits judgment was rendered in plaintiff’s favor rescinding and setting aside the sale and granting further judgment in his favor for $2,-700.00 plus interest and costs. Judgment was rendered in defendant’s favor for $346.40 as prayed for in his reconventional demand. Defendant appealed. Plaintiff answered the appeal praying that the judgment in his favor be increased by allowing the $4.00 per day storage charges, and that the judgment in defendant’s favor on the' reconventional demand be reduced to $180.-00 by eliminating the $166.40 painting item.
Defendant-appellant’s brief was not timely filed and the matter was submitted without argument. Further time was granted each party within which to file supplemental briefs which time has now elapsed without any supplemental briefs being filed.
In his original brief before us defendant contends that the Trial Court erred in holding that the machine was unfit to perform the work for which it was purchased. He further contends that the engine was repaired in accordance with the sales contract and was tested by plaintiff before delivery; that plaintiff received what he bargained for.
The record reveals that the tractor in question was 25 years old and in need of major repairs when plaintiff purchased it, which fact was known to plaintiff. This fact is responsible for the terms of the agreement of sale which was executed by the parties on May 4, 1964. The agreement reads as follows:
“ACT OF SALE
“For and in consideration of the sum of TWENTY-SIX HUNDRED ($2,-600.00) DOLLARS, I, C. J. TINER hereby sell unto SHERMAN BERNARD one D-7 Caterpillar Dozer, Model 7M13, Motor No. ■ — , It is understood and agreed that I, C. J. Tin- *865 er, shall install or repair the engine and I guarantee the following equipment to he in good working order: Blade mechanism, transmission, tracks, rear end, injector mechanism, air cooled motor.
“The above guarantees are for a period of thirty (30) days after delivery and it is further understood and agreed that the engine replacement shall be completed within thirty days after date.
“The above guarantees shall be subject to acceptance at the time of delivery.
May 4, 1964”
Following the sale defendant undertook to repair the machine. After the repairs were made and before delivery of the tractor plaintiff tested it to see if it would run by driving it about 40 feet on level ground without a load.
Plaintiff testified that when the tractor was delivered to him it was apparently in good condition.
However plaintiff testified that when he tried to do some work with it on the very day it was delivered he found that it would not push a load. He testified “ * * * when I put a load on the machine it just didn’t have any power. I got in a little soft spot with it and it didn’t have enough power to pull itself out of the hole,” and that “ * * * we went and got a winch truck to hook the winch onto it to pull it out of the hole.” Plaintiff further testified that when he tried to use it again the following day he “ * * * used it for approximately twenty minutes and it was smoking so bad, and water was coming out of the side, the motor oil was coming out of the side of the motor. And it quit running by itself right in the middle of the road. I had to get a winch truck to drag it out of the road. It wouldn’t start, I couldn’t get it started any more. We tried all day long to get the machine started, but it wouldn’t start.”
It would serve no good purpose to review the testimony in detail. The record fully supports the District Judge’s findings of fact and we agree with the conclusions stated by him as follows:
“After acceptance of the tractor by plaintiff, the uncontradicted testimony is that it was not capable of performing the work for which the plaintiff purchased it. Defendant knew the exact nature and locale of the work intended to be performed by the tractor at the time plaintiff agreed to purchase it.
“The testimony reveals that defendant repaired the tractor prior to delivery and that it was in running condition at the time it was delivered. However, it is undisputed that after operating in an unsatisfactory manner for short periods on two consecutive days, the tractor engine stopped completely and has not operated since. The Court is satisfied that the tractor was inadequate for the work intended to be performed.
“This conclusion is supported by the fact that three different tractors performed work at the exact location where this tractor worked. Although there was difficulty with the tractors sticking in the mud, there is no indication that any tractor except the one at issue was incapable of doing the work. There is no evidence that the tractor was improperly handled while in plaintiff’s possession, and the evidence is uncontradicted that it has broken down and stopped running.
“When the tractor broke down, plaintiff notified defendant. Defendant relying on the written agreement, refused to have anything further to do with the machine and did not inspect it.
“Defendant’s position is that under the written agreement of May 4, 1965, he guaranteed the blade mechan *866 ism, transmission, tracks, rear end, injector mechanism, and air-cooled motor for a period of thirty days and that he did not guarantee the tractor engine.
“The Court does not agree with defendant’s contention. At the time the agreement was entered into the tractor engine was not in running condition. Defendant agreed to repair it or install another engine. Obviously this was not a sale of the engine ‘as is’.
“Nor does the fact that defendant expressly warranted certain specified components of the tractor exclude the legal warranty on the entire machine in the absence of an express exclusion. This is particularly so where defendant knew the precise nature and location of the work which plaintiff purchased the tractor of (sic) perform. It was valueless to plaintiff, if it could not perform the work. The evidence that the tractor could not do the work, and stopped running entirely, is unim-peached. This evidence prevails over the opinion of defendant’s expert witness, Gomila.
“There being no evidence of what repairs, if any, may be made to the tractor, the Court has no alternative other than to set the sale aside. Plaintiff purchased another tractor and is therefore not entitled to loss of use. The only expenses in connection with the sale for which he may recover is the sum of $40.00 representing the cost of delivering the tractor to the job site, plus $60.00 for moving it from the job site.
“Defendant has established to the satisfaction of the Court his claim in reconvention totaling the sum of $346.-40 * * *«
Plaintiff contends that he is entitled to recover for storage of the machine at the rate of $4.00 per day from July 1, 1964 until the machine is moved from his storage yard. After the machine broke down and would not run plaintiff had it hauled to his home and placed it in the rear yard where he kept his other equipment. The record is bare of any proof as to what such storage is worth and there is no basis upon which a judgment therefor could be rendered.
Plaintiff also contends that the defendant is not entitled to the $166.40 painting item included in his reconventional demand, but does not state why the item should be disallowed. While the testimony reveals a dispute between the parties as to this item the District Judge found that it was due to defendant and we find no manifest error in such finding.
For the foregoing reasons the judgment appealed from is affirmed; defendant-appellant to pay all costs of this appeal.
Affirmed.